# Order

**Michigan Supreme Court**
**Lansing, Michigan**

March 23, 2007

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

130862-63 & (142)(145)

TRACY NEAL, and All Others Similarly Situated,
        Plaintiffs-Appellees,
        Cross-Appellants,
v

SC: 130862
COA: 253543
Washtenaw CC: 96-006986-CZ

DEPARTMENT OF CORRECTIONS, DIRECTOR
WILLIAM OVERTON, KENNETH McGINNIS,
SALLY LANGLEY, JOAN YUKINS, CLARICE
STOVALL, CAROL HOWES, ROBERT SALIS,
CORNELL HOWARD, NANCY ZANG, JOHN
ANDREWS, JAN BALDWIN, WES BONNEY,
DAVID CRUIKSHANK, JOSEPH DURIGON,
WILLIAM ELLISON, CHRISTOPHER
GALLAGHER, DAVID HABITZ, EDWARD
HOOK, JACK HUTCHINS, DENNIS IFORD,
DERLE JONES, ART LANCASTER, THOMAS
PORTMAN, ERIN RICHARDSON, RODERICK
ROBEY, ANTHONY SIMMONS, MARTIN TATE,
CHARLES WILLIAMS, and LYNN WILLIAMS,
        Defendants-Appellants,
        Cross-Appellees,
and

FRED WELCH,
        Defendant.
_____

NICOLE ANDERSON, and All Others Similarly
Situated,
        Plaintiffs-Appellees,
        Cross-Appellants,
v

SC: 130863
COA: 256506
Ct of Claims: 03-000162-MZ

DEPARTMENT OF CORRECTIONS,
DEPARTMENT OF CORRECTIONS DIRECTOR
PATRICIA CARUSO, WILLIAM OVERTON, and
KENNETH McGINNIS,
        Defendants-Appellants.
_____/

On order of the Court, the motion for miscellaneous relief is GRANTED.  The application for leave to appeal February 23, 2006 judgment of the Court of Appeals and the application for leave to appeal as cross-appellants are considered, and they are DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

WEAVER, J., concurs and states as follows:

I concur in the order denying leave to appeal.  I write separately to note that Chief Justice Taylor has disqualified himself from this case but has supplied no reasons for his decision not to participate.

Although I specifically requested Chief Justice Taylor's reasons for not participating in this case at the October 25, 2006, conference, he refused to provide them in writing or verbally.

My request that Chief Justice Taylor give reasons on the record for his nonparticipation is not trivial.  Nor is it motivated by resentment or personal ill will.  A justice has a duty to supply the parties, the public, and thereby future litigants, with his or her reasons for nonparticipation.

Where, as here, a justice decides on his own motion not to participate in a case, the justice should be accountable to the parties and the public for his decision.  Chief Justice Taylor still has not given his reason for not participating in this case.  While his reasons likely support his decision to not participate, his decisions need to be in writing, on the record, and available to the parties, the public, and thereby future litigants.[1]

---

[1] For a detailed discussion of why it is necessary for a justice recusing himself/herself from a case to provide written reasons for his/her decision, see my statement in *People v Parsons*, unpublished order of the Supreme Court, entered March 6, 2007 ( Docket No. 132975), provided below:

> WEAVER, J., concurs and states as follows:
> I concur with the order to stay trial court proceedings in this case and write separately to state again that a justice has a duty to supply the public, and thereby future litigants, with his or her reasons for nonparticipation.  As I wrote almost two (2) years ago (in 2005) in *Scalise v Boy Scouts of America*, 473 Mich 853, 854 (2005) (Weaver, J., dissenting):
>
> "Const 1963, art 6, § 6, which states that 'Decisions of the supreme court . . . shall be in writing and shall contain a concise statement of the facts and reasons for each decision . . .' requires that justices give written reasons for each decision.[1]  There is no more fundamental purpose for the

requirement that the decisions of the Court be in writing than for the decisions to be accessible to the citizens of the state. Because a justice's decision to not participate in a case can, itself, change the outcome of a case, the decision is a matter of public significance and public access and understanding regarding a justice's participation or nonparticipation is vital to the public's ability to assess the performance of the Court and the performance of the Court's individual justices. Thus, the highest and best reading of art 6, § 6 requires that a justice's self-initiated decision not to participate, or a challenged justice's decision to participate or not participate, should be in writing and accessible to the public."

As I stated in my December 21, 2006, dissent to the order denying the motion for stay in *Grievance Administrator v Fieger,* 477 Mich 1228 (2006), I first raised the issue of justice recusal almost four (4) years ago when, in *In re JK,* 468 Mich 202 (2003) (a termination of parental rights and reversal of adoption case, not involving attorney Geoffrey Fieger), I had reason to examine the rules governing my own participation in that case:

"During the consideration of *In re JK*, I was informed that unwritten 'traditions' governed the decision and that, MCR 2.003 the court rule concerning disqualification of all other Michigan judges, did not apply to justices of the Michigan Supreme Court. I was further informed that it was a 'tradition' of the Court that the decision whether a justice would disqualify himself or herself was left to the individual justice and that no reasons for the decision whether to participate or not participate in a case were to be given.

"I concluded that these unwritten traditions and the unfettered discretion violate Michigan's Constitution, which requires justices to give written reasons for each decision, including a decision to participate in or be disqualified from a case.[2]

"Because the Court's traditions were clearly inadequate, in *In re JK, supra,* I followed the remittal of disqualification procedure provided by MCR 2.003(D). In light of my understanding of the requirements of Const 1963, art 6, § 6, I also provided an explanation in writing of my decision not to participate and asked that the Court open an administrative file to explore the rules that should govern justice disqualification decisions.[3] [*Fieger, supra* at 1240.]"

Thus, any assertion that my position on justice recusals is new, or began with attorney Fieger's motion to disqualify "the majority of four" (then Chief Justice Corrigan and Justices Taylor, Young, and Markman) is incorrect.

It is important to note that attorney Fieger initially moved to disqualify me, as well as "the majority of four." Then, when I denied the motion with written reasons for my decision not to recuse myself, attorney Fieger made no further disqualification motions against me, although attorney Fieger has continued to make disqualification motions against "the majority of four." See *Gilbert v DaimlerChrysler Corp*, 469 Mich 883, 889 (2003) (Weaver, J., participating in part and voting to grant reconsideration in part).

It is also untrue that my position on justice recusals has only been directed toward Chief Justice Taylor and Justices Corrigan, Young, and Markman. I have, in fact, raised the issue of the importance of providing the reasons for nonparticipation to Justice Cavanagh, most recently in *White v Hahn*, ___ Mich ___ (2007) (Docket No. 132191), a case in which Justice Cavanagh's daughter represents one of the parties.[4]

In *Hahn, supra,* I noted that Justice Cavanagh had not included his reason for recusal, but had informed me he would do so in future cases. Further, Justice Kelly has also indicated to me that in the future, she will request that her reasons for not participating be included with her decisions on the orders. Thus, obviously, contrary to assertions of a concurring justice, I have taken up my position on justice recusals with Justices Cavanagh and Kelly. As noted above, I have publicly raised this issue since 2003 by my statement in *In re JK, supra.*

At present there is no sufficient system in place in this Court for providing to justices adequate notice of justice recusals. Given the current "helter-skelter" approach to handling justice recusal decisions, it is unreasonable to expect that any justice would be able to identify all justice recusals. For instance, it is when a case appears on a conference agenda, or sometimes, but not always, on commissioner reports, that a justice has a reasonable opportunity to learn about a fellow justice's recusal from a case and to request that nonparticipating justice to provide written reasons for not participating.[5]

Further, other assertions by concurring justices are simply incorrect and untrue. For instance: my reliance on art 6, § 6 of the Michigan Constitution is not newfound or incorrect as evidenced by this very order, which is issued as a "decision of the Supreme Court," not just from one justice. Further, I have no proposal or "desire to abolish our elective system for justices and judges."[6]

A justice's decision to participate or not participate (recuse himself or herself) in a case implicates a bedrock principle of our judicial system— the impartiality of the judiciary. Without a record of a justice's reasons to

not participate in a case, how can future litigants be guaranteed that the same reasons are not present in their cases?  Moreover, how can the people of Michigan be sure that a justice is not simply refusing to work on a case to avoid some controversy that the case might involve—for example, a controversy that might call into question his or her impartiality on an issue or make reelection more difficult?

The impartiality of the judiciary preserves the ethics of judicial administration, protects decision-making, and ensures the public's, and thereby future litigants', trust and confidence in the judiciary. Thus, preserving the impartiality of the Court is "real work of the Court."

What are needed are clear, fair, enforceable, written, and published rules concerning the participation, nonparticipation, or disqualification of justices.  Such rules would enhance the accountability of justices to the public.  They would provide a way for the public to have some knowledge about how justices conduct the public's business so that the public could accurately assess the justices' performance of their duties.

Further while it appears to continue to be for <u>some</u> justices a "tradition" of this Court for a justice who disqualifies himself or herself from a case to not give written reasons, it is a "tradition of secrecy" that must for <u>all</u> justices end now.  An impartial judiciary is "ill served by casting a cloak of secrecy around the operations of the courts . . . ."[7]

_____

[1] Article 6, § 6 of the 1963 Michigan Constitution states, in full:

Decisions of the supreme court, including all decisions on prerogative writs, shall be in writing and shall contain a concise statement of the facts and reasons for each decision and reasons for each denial of leave to appeal.  When a judge dissents in whole or in part he shall give in writing the reasons for his dissent.

[2] Const 1963, art 6, § 6, *supra*, n 1.

[3] In my statement of nonparticipation in *In re JK, supra*, I also proposed for public comment amendments of MCR 2.003 that would require that a justice publish in the record of the case the reasons for the decision to participate or not participate in the case when the issue of disqualification was raised by a party, the justice himself or herself, or another justice.  I further outlined the procedure for a justice to raise his or her potential disqualification with the parties and their attorneys.  See *In re JK, supra,* 220-221 (Weaver, J., nonparticipation statement).

---

[4] See *Hahn*, *supra*:

"WEAVER, J., (*concurring*). I concur in the order of denial and note that Justice Cavanagh has properly supplied to the justices and staff his reason for his decision not to participate in this case because his daughter, Megan Cavanagh, represents the defendant, Robert Hahn. However, in this case, he has not, as required by Michigan Const 1963, art 6, § 6, requested that the reason for his decision be included with the order. I further note that Justice Cavanagh has informed me that in the future he will request that his reasons for not participating be included with his decisions on the orders. [*Hahn, supra,* ___ Mich ___ (2007).]"

[5] In addition, when justice "non-hold memos" associated with orders scheduled to enter are received monthly in large batches, with sometimes less than a week before the scheduled entry date, a justice does not have a reasonable opportunity to learn about a fellow justice's recusal from a case.

[6] My revised proposal for the 2007-2008 election cycle to reform and improve, not abolish, the present system of election and appointment of justices, along with reform of term limits for justices, will be published on my personally funded website, <www.justiceweaver.com>, this year, 2007. My similar proposal to reform and improve, not abolish, the election and appointment of justices for the 2005-2006 election cycle was circulated in 2005-2006.

[7] *Scott v Flowers*, 910 F2d 201, 213 (CA 5, 1990).

TAYLOR, C.J., not participating.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

March 23, 2007

_____
Clerk

t0320