# Order

**Michigan Supreme Court**
**Lansing, Michigan**

April 13, 2007

129241 & (31)(39)

CHARLENE TATE,
   Plaintiff-Appellant,

v

CITY OF DEARBORN,
   Defendant-Appellee.

_____/

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

SC: 129241
COA: 261950
Wayne CC:  04-404500-NO

On order of the Court, leave to appeal having been granted and the case having been briefed and argued by counsel, the order of January 13, 2006 which granted leave to appeal is VACATED and leave to appeal is DENIED because we are no longer persuaded the question presented should be reviewed by this Court.

In this case, plaintiff seeks a stay of proceedings until final disposition of pending federal litigation, wherein plaintiff's counsel initiated a lawsuit challenging the constitutionality of the Michigan Supreme Court recusal rule.  See *Fieger v Ferry*, 471 F 3d 637 (CA 6, 2006).

In the recent past, plaintiff's counsel has filed numerous motions for the recusal of one or more Michigan Supreme Court Justices, either in his capacity as a party or as an attorney on behalf of his clients.  Each of the prior motions for recusal has involved various allegations of claimed bias, principally stemming from Michigan Supreme Court judicial campaigns.  All of the previous motions for recusal have been denied.  *Graves v Warner Bros*, 469 Mich 853 (2003); *Gilbert v DaimlerChrysler Corp*, 469 Mich 883 (2003); *Harter v Grand Aerie Fraternal Order of Eagles*, 693 NW2d 381 (2005); *Grievance Administrator v Fieger*, 472 Mich 1244 (2005); *McDowell v City of Detroit*, 474 Mich 999 (2006); *Stamplis v St John Health Sys*, 474 Mich 1017 (2006); *Heikkila v North Star Trucking*, Inc, 474 Mich 1080 (2006); and *Lewis v St John Hosp*, 474 Mich 1089 (2006).

The pending motion to stay this case asserts no new basis for recusal.  Rather, the motion is predicated entirely on allegations made in the previous eight motions that have been considered and denied.

As we have each done in connection with these past motions, and as Justices must do in connection with every motion for disqualification, we have each looked into our consciences in this case and concluded that we are able to accord fair, impartial and equal treatment to plaintiff's counsel and his clients.

Further, the motion is predicated on the erroneous notion that disqualification of a Justice of the Michigan Supreme Court is governed by the disqualification procedure set forth in MCR 2.003. On the contrary, this procedure has never been held applicable to disqualification of Justices. See, e.g., *Adair v State of Michigan*, 474 Mich 1027, 1043 (2006) (statement of Cavanagh, J.), 1029 n 2, (statement of Taylor, C.J., and Markman, J.); *In re JK,* 468 Mich 202, 220 (2003) (statement of Weaver, J.). Throughout its history, the disqualification procedure followed in the Michigan Supreme Court is similar to the one followed in the United States Supreme Court. See Statement of Recusal Policy, United States Supreme Court, November 1, 1993; *Laird v Tatum*, 409 US 824, 833, 837; 93 S Ct 7; 34 L Ed 2d 504 (1972); *Jewell Ridge Coal Corp v Local 6167*, 325 US 897; 65 S Ct 1550; 89 L Ed 2007 (1945) (Jackson, J., *concurring*).

There being no new asserted basis that would warrant a stay of proceedings, the motion is DENIED.

The motion for recusal and for evidentiary hearing is DENIED.

CAVANAGH, J., concurs and states as follows:

I concur with this Court's order denying leave to appeal. However, I cannot participate in the decision regarding the motion for recusal and for an evidentiary hearing because current Court practices — with which I disagree — only allow the individual justice who is the subject of the motion to decide the motion. Thus, I can offer no opinion about the validity of the motion for recusal and for an evidentiary hearing that was filed.

WEAVER, J., concurs in part and dissents in part and states as follows:

I concur in the Court's order denying leave to appeal. I write further to state that I dissent from the participation of the majority of four, Chief Justice Taylor and Justices Corrigan, Young, and Markman in this case, where Mr. Geoffrey N. Fieger's law firm represents the plaintiff. For my reasons in detail, see my dissent in *Grievance Administrator v Fieger,* 476 Mich 231, 328-347 (2006) (Weaver J., dissenting), and my dissent to the denial of the motion for stay in *Grievance Administrator v Fieger,* 477 Mich 1228, 1231-1271 (2006) (Weaver, J., dissenting).

I also dissent from the order denying plaintiff's motion for stay of proceedings pending Mr. Fieger's lawsuit in the United States District Court for the Eastern District of Michigan concerning Michigan's disqualification rules for Supreme Court justices. See *Fieger v Ferry*, 471 F3d 637 (CA 6, 2006). I would grant the motion to stay.

Furthermore, although MCR 2.003 is inadequate and in need of reform, which reform I have urged,[1] without success for almost 4 years, this Court to undertake action

---

[1] Since May 2003, I have repeatedly called for this Court to recognize, publish for public comment, place on a public hearing agenda, and address the need to have clear, fair, orderly, and public procedures concerning the participation or disqualification of justices. See, e.g., statements of Weaver, J., in *In re JK,* 468 Mich 202 (2003); *Gilbert v DaimlerChrysler Corp,* 469 Mich 883 (2003); *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 472 Mich 91 (2005); *McDowell v Detroit,* 474 Mich 999 (2006); *Stamplis v St John Health Sys*, 474 Mich 1017 (2006); *Heikkila v North Star Trucking,*

and achieve, the disqualification of justices is governed by the disqualification procedure contained in MCR 2.003. Although the majority of four asserts the contrary, the past four years have exposed inconsistencies in the standards that individual justices apply to themselves when making their decision to participate, or not to participate, in a case. At times the justices have applied the court rule governing the disqualification of judges, MCR 2.003, to themselves, and at times they have not.

For example, in *Adair v Michigan,* 474 Mich 1027, 1043 (2006), Chief Justice Taylor and Justice Markman stated that "[p]ursuant to MCR 2.003(B)(6), we would each disqualify ourselves if our respective spouses were participating as lawyers in this case, or if any of the other requirements of this court rule were not satisfied." Justice Young concurred fully in this legal analysis. *Id.* at 1053. Similarly, in *Grosse Pointe Park v Michigan Municipal Liability & Prop Pool,* 473 Mich 188 (2005), then-Chief Justice Corrigan used the remittal of disqualification process of MCR 2.003(D). At other times, however, the same justices have not followed the provisions of MCR 2.003. For example, in *Gilbert v DaimlerChrysler Corp,* 469 Mich 883, 889 (2003), then-Chief Justice Corrigan and Justices Taylor, Young, and Markman denied a motion for reconsideration of the Court's order denying the motion for disqualification and did not refer the motion to the State Court Administrator for the motion to be assigned to another judge for review de novo, as would be proper under MCR 2.003(C)(3).

Assertions that justices can continue to look into their consciences and conclude they are able to accord fair, impartial, and equal treatment to parties' counsel and clients without any independent check on justices' decisions are incorrect. This method is insufficient and inadequate to meet the due process rights of parties and their counsel. Further, while it appears to continue to be for *some* justices a "tradition" of this Court for a justice who disqualifies himself or herself from a case to not give written reasons, and to sometimes apply MCR 2.003 to himself or herself, and to sometimes not, it is a "tradition of secrecy" and inadequacy that must for *all* justices end now. An impartial judiciary is "ill served by casting a cloak of secrecy around the operations of the courts . . . ."[2]

MARKMAN, J., concurs and states as follows:

I concur in the Court's order denying leave to appeal. I write separately to observe that there is more at issue in controversies involving successive federal and state claims than matters of res judicata, the convenience of parties, judicial economy, and the avoidance of opportunities for alleged gamesmanship. Also at issue is the effect of our rules and decisions upon judicial federalism and the extent to which, as a general proposition, federal claims should be heard in federal courts and state claims in state

---

*Inc,* 474 Mich 1080 (2006); *Lewis v St John Hosp,* 474 Mich 1089 (2006); *Adair v Michigan,* 474 Mich 1027 (2006); *Grievance Administrator v Fieger,* 476 Mich 231 (2006)*; Grievance Administrator v Fieger*, 477 Mich 1228 (2006); *People v Parsons*, Docket No. 132975 (2007); *Ruiz v Clara's Parlor*, Docket No. 130847 (2007); and *Neal v Dep't of Corrections*, 477 Mich ___ (Docket No. 130862, issued March 23, 2007).

[2] *Scott v Flowers*, 910 F2d 201, 213 (CA 5, 1990).

courts. In accord, *In re Certified Questions (Melson v Prime Ins Syndicate, Inc)*, 472 Mich 1225, 1231 (2005) (Markman, J., dissenting). While the federal judiciary has been specifically instructed by the United States Supreme Court to consider the effect of exercising pendent or supplemental jurisdiction upon our federal structure, see, e.g., *Aldinger v Howard*, 427 US 1, 15 (1976), the state judiciary also has an obligation to assist in preserving judicial federalism, in relevant part here through its exposition of what does and does not constitute res judicata where successive federal and state claims have been filed. Although the instant parties were specifically directed to address "whether the interests of federalism or state sovereignty are implicated by this case," little briefing or oral argument was submitted. I hope that the bench and bar will increasingly be prepared to assess Michigan court rules, see, e.g., MCR 2.203, and caselaw, see, e.g., *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372 (1999), pertaining to res judicata, in the context of federalism concerns as well as in the context of practical concerns such as the efficiency of litigation and the economical use of judicial resources.

KELLY, J., dissents and states as follows:

I would grant the motion for stay. Regarding the merits of the case, I would reverse the order of the Court of Appeals and reinstate the April 5, 2005, order of the Wayne Circuit Court. See *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372 (1999). I do not participate in the decision regarding the motion for recusal. The Court's established procedure is to leave the decision to the discretion of the challenged justice. However, I continue to urge the Court to establish and put in writing a better procedure to handle motions to disqualify a Supreme Court justice from participation in a case.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 13, 2007

*Corbin R. Davis*
Clerk

t0410