**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0240n.06

No. 07-2342

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Apr 20, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| GEOFFREY NELS FIEGER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CARL L. GROMEK, *et al.*, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

Before:  COLE and GIBBONS, Circuit Judges; and BELL, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.**  This appeal represents trial attorney Geoffrey N. Fieger's latest attempt to involve the federal courts in his long-running dispute with several justices of the Michigan Supreme Court.[1]  *See, e.g.*, *Fieger v. Mich. Supreme Court*, 553 F.3d 955 (6th Cir. 2009); *Fieger v. Ferry*, 471 F.3d 637 (6th Cir. 2006); *Gilbert v. Ferry*, 413 F.3d 578 (6th Cir. 2005).  In his second trip to our court in the present case, Fieger argues that the district court improperly dismissed his suit by misconstruing our prior mandate and finding that Fieger's as-applied challenge to the recusal rules of the Michigan Supreme Court did not survive his initial

---

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

[1]We have substituted the current State Court Administrator, Carl L. Gromek, for original defendant John D. Ferry, Jr., in accordance with Federal Rule of Civil Procedure 25(d).

appeal. We agree that the district court improperly interpreted our mandate; however, because the Michigan Supreme Court formally amended its court rule pertaining to the disqualification of a judge by providing for its application to Justices of that court, Fieger's remaining as-applied claim is now moot. We therefore vacate the judgment of the district court and remand to the district court with instructions to dismiss.

## I.

Because this is the second time this case has arrived at our court, we will summarize the relevant facts. Fieger is a trial attorney and former Democratic candidate for Michigan governor best known for defending assisted suicide advocate Dr. Jack Kevorkian. Over the past several years, Fieger has engaged in what the district court aptly characterized as an "acrimonious and well-publicized dialogue" with four Republican justices of the Michigan Supreme Court: Maura Corrigan, Stephen J. Markman, Clifford W. Taylor[2], and Robert P. Young, Jr. (the "justices"). The justices have publicly responded to Fieger's comments during the course of their re-election campaigns, suggesting to the citizens of Michigan that being despised by Fieger is not necessarily a bad thing. The current spate of federal litigation began after the Michigan Supreme Court reviewed and reversed two multimillion dollar jury verdicts Fieger's firm had won. *See Gilbert v.*

---

[2]We note that Chief Justice Taylor did not win reelection to the Michigan Supreme Court in 2008 and is therefore no longer a proper party to this suit. *See* David Eggert, *Marilyn Kelly New Chief Justice of Michigan Supreme Court*, mlive.com, Jan. 8, 2009, *available at* http://www.mlive.com/news/index.ssf/2009/01/marilyn_kelly_new_chief_justic.html (last visited Aug. 31, 2009) (noting that Democratic candidate Diane Hathaway defeated Taylor); *see also* Audio Recording: Oral Arg. at 9:43 (Jan. 21, 2009) (on file with the clerk).

*DaimlerChrysler Corp.*, 685 N.W.2d 391, 395 (Mich. 2004) (finding a new trial warranted because Fieger "engaged in a sustained and deliberate effort to divert the jury's attention from the facts and the law"); *Graves v. Warner Bros.*, 666 N.W.2d 665 (Mich. 2003) (denying leave to appeal from the Michigan Court of Appeals' reversal of $29.3 million verdict). In each case, Fieger sought the recusal of the four Michigan justices, alleging that their public statements demonstrated bias against Fieger and his clients. The justices rejected Fieger's motions in both cases. *See Gilbert v. DaimlerChrysler Corp.*, 669 N.W.2d 265 (Mich. 2003); *Graves v. Warner Bros.*, 669 N.W.2d 552 (Mich. 2003).

Before the justices ruled on Fieger's recusal motions, Fieger filed suit in the United States District Court for the Eastern District of Michigan, claiming that the Michigan courts would violate his right to a fair and impartial tribunal if the justices failed to recuse themselves. The district court dismissed Fieger's suit on the basis of the *Rooker-Feldman* doctrine following the justices' denial of the motions, *Gilbert v. Ferry*, 298 F. Supp. 2d 606, 618 (E.D. Mich. 2003); and we ultimately affirmed on the alternative grounds of *Younger* abstention and collateral estoppel. *Gilbert*, 413 F.3d at 579; *see also District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Younger v. Harris*, 401 U.S. 37 (1971); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

Fieger filed the present suit on April 9, 2004. Rather than assert the alleged harm to his clients' interests by the potential absence of an impartial tribunal, the current suit seeks to vindicate Fieger's own personal interest "to pursue his chosen profession, avocation and occupation free from reprisal for exercising his First Amendment rights . . . and to have his cases . . . decided by a fair,

independent, and impartial tribunal." (Compl. at ¶ 10.) Fieger alleges that the justices' "public, personal, political, and professional animus" toward him requires their recusal and that the justices' failure to do so violates his Fourteenth Amendment right to due process of law. (Compl. at ¶ 11.) The district court initially dismissed this second suit, citing once again to the *Rooker-Feldman* doctrine. *Fieger v. Ferry*, No. 04-60089, 2005 U.S. Dist. LEXIS 44190, at *2, *14-27 (E.D. Mich. Jan. 13, 2005). On appeal, we reversed the district court's judgment in part, explaining that the *Rooker-Feldman* doctrine only applies when the alleged harm finds its foundation in the *past* judgment of a state court. *Fieger*, 471 F.3d at 646. While Fieger could not employ a federal suit to challenge the Michigan justices' past refusals to recuse themselves, he potentially could assert a claim alleging that their failure to do so in *future* cases would violate Fieger's Fourteenth Amendment rights. *Id.*; *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (limiting application of the *Rooker-Feldman* Doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"). Consequently, we remanded Fieger's remaining challenges to Michigan's recusal procedure to the district court for further proceedings. *Fieger*, 471 F.3d at 646.

On remand, the district court determined that while Fieger had brought both facial and as-applied challenges to Michigan's recusal procedure, only the facial challenge survived the issuance of our mandate. *Fieger v. Ferry*, No. 04-60089, 2007 U.S. Dist. LEXIS 71274, at *12 (E.D. Mich. Sept. 26, 2007). The district court reasoned that an as-applied challenge "in future cases" necessarily "does not and cannot exist" because as-applied challenges can only concern past actions of the

parties involved. *Id.* at \*12-13. According to the district court, as-applied challenges exist solely "to redress existing violations," not future ones. *Id.* at \*13. Turning to the merits of the remaining facial challenge, the district court found that Fieger's claim could not succeed because Michigan's existing recusal procedures would not be clearly unconstitutional in all circumstances. *Id.* at \*20. Fieger timely appealed only the district court's dismissal of his as-applied challenge.

## II.

### A.

Fieger argues on appeal that the district court misconstrued both our mandate and the purpose of as-applied challenges in general when it determined that Fieger could not press his as-applied claim on remand. The justices argue that the district court correctly interpreted our prior mandate and carried it into effect through its finding that Fieger could not proceed with his as-applied challenge. It is axiomatic that district courts "must adhere to the commands of a superior court." *United States v. Twp. of Brighton*, 282 F.3d 915, 919 (6th Cir. 2002) (*per curiam*) (internal quotation marks and citation omitted). Consequently, district courts have a duty, after they receive our mandate and once again obtain jurisdiction, "to obey the terms of the mandate and to carry it into effect." *Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Natural Res.*, 71 F.3d 1197, 1202 (6th Cir. 1995). In order to determine which party's arguments are correct, we must examine what our prior opinion actually held.

*Fieger v. Gromek* (07-2342)

Our initial opinion found that the most difficult issue presented was whether "Fieger's constitutional challenge (*both facial and as-applied*) to Michigan's recusal procedures was barred by *Rooker-Feldman*." *Fieger*, 471 F.3d at 644 (emphasis added). We noted that Fieger framed his litigation as "forward-looking . . . not complaining of injuries caused by [his] past cases" before the Michigan Supreme Court. *Id.* at 644-45. After analyzing the United States Supreme Court's newest restatement of the *Rooker-Feldman* doctrine in *Exxon Mobil*, we held that to the "extent[] the source of Fieger's alleged injury is not the past state court judgments . . . [but rather] the purported unconstitutionality of Michigan's recusal rule *as applied* in future cases," *Rooker-Feldman* could not serve to bar Fieger's suit. *Id.* at 646 (emphasis added). Thus, we reversed the district court's dismissal of Fieger's complaint and remanded for further proceedings. *Id.*

It is clear that our prior holding explicitly acknowledged that Fieger's suit contained an as-applied challenge to Michigan's recusal rules in addition to his facial attack. *See id.* at 648 n.1 (noting that "[t]he district court on remand will consider the merits of Plaintiff's *twin* due process challenges" (emphasis added)) (Clay, J., concurring). As we did not consider that our holding prohibited Fieger from advancing his as-applied challenge on remand, it was error for the district court to cite our opinion as the basis for its decision to refuse to consider the claim. *Compare id.* at 646 (Stafford, J., for the court) (noting that Fieger's as-applied challenge survived *Rooker-Feldman* analysis), *with Fieger*, 2007 U.S. Dist. LEXIS 71274, at *12-14 (concluding that Fieger's claim was barred). Further, to the extent the district court believed that an as-applied challenge "does not and cannot" apply to a potentially future set of facts, it is mistaken. *Compare Fieger*, 2007 U.S. Dist. LEXIS 71274, at *12, *with Giles v. Garland*, 281 F. App'x 501, 512 (6th Cir. 2008) (vacating a

6

district court's dismissal of an as-applied First Amendment claim). "[A] declaratory judgment generally is sought before a completed injury-in-fact has occurred." *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998). Thus, we agree with Fieger and hold that the district court failed to follow our mandate when it refused to consider his as-applied challenge on remand.

**B.**

Our holding that the district court violated the mandate rule does not conclude our analysis. "A federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue." *United States v. City of Detroit*, 401 F.3d 448, 450 (6th Cir. 2005) (quoting *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001)); *see also Church of Scientology v. United States*, 506 U.S. 9, 12 (1992). "A case becomes moot when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome." *Id.* (citations and quotation marks omitted). The mootness inquiry generally depends upon "whether the relief sought would, if granted, make a difference to the legal interests of the parties . . . ." *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (*en banc*) (citation and quotation marks omitted). It must, therefore, "be made at every stage of a case; thus, if a case becomes moot during an appeal, the judgment below must be vacated and the case remanded with instructions to dismiss." *Id.*

As we have previously described:

*Fieger v. Gromek* (07-2342)

> Fieger maintains that the Michigan Supreme Court does not follow the procedures set forth in [Michigan Court Rule ("MCR")] 2.003(c)(3) for review of a judge's decision not to recuse himself or herself from a case. He contends that, by failing to follow such procedures, the Michigan Supreme Court violates the Constitutional guarantee to due process. In his complaint, he asks the court to enter a declaratory judgment that the word "judge" in MCR 2.003 includes "Justice" of the Michigan Supreme Court, thus making the review procedures applicable to the Michigan Supreme Court. In the alternative, Fieger asks the Court to declare that the rule is unconstitutional . . . as applied.

*Fieger*, 471 F.3d at 642.

On November 25, 2009, the Michigan Supreme Court formally amended MCR 2.003, specifically providing for its application to justices of that court. *See* MCR 2.003(A) ("Applicability. This rule applies to all judges, including justices of the Michigan Supreme Court, unless a specific provision is stated to apply to judges of a certain court. The word "judge" includes a justice of the Michigan Supreme Court."). The amendments also incorporate several changes that directly address and clarify the issues underlying Fieger's challenge. For example, the disqualification rule now expressly addresses the question of bias or any appearance of bias that may arise from a judge's campaign speech:

> A judge is not disqualified based solely upon campaign speech protected by *Republican Party of Minn. v. White*, 536 U.S. 765 (2002), so long as such speech does not demonstrate bias or prejudice or an appearance of bias or prejudice for or against a party or an attorney involved in the action.

MCR 2.003(C)(2)(b). The new disqualification rule also expressly sets forth a process by which a challenge to the participation of a Supreme Court justice in a given case will be decided:

8

*Fieger v. Gromek* (07-2342)

> In the Supreme Court, if a justice's participation in a case is challenged by a written motion or if the issue of participation is raised by the justice himself or herself, the challenged justice shall decide the issue and publish his or her reasons about whether to participate.
>
> If the challenged justice denies the motion for disqualification, a party may move for the motion to be decided by the entire Court. The entire Court shall then decide the motion for disqualification de novo. The Court's decision shall include the reasons for its grant or denial of the motion for disqualification. The Court shall issue a written order containing a statement of reasons for its grant or denial of the motion for disqualification. Any concurring or dissenting statements shall be in writing.

MCR 2.003(D)(3)(b).

Because we must "apply the law as it is now," *Kremens v. Bartley*, 431 U.S. 119, 129 (1977), we "can neither declare unconstitutional nor enjoin the enforcement of a provision that is no longer in effect," *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004); *see also Dubuc v. Parker*, 168 F. App'x 683, 688 (6th Cir. 2006). The Michigan Supreme Court's adoption of a new court rule deprives this court of a live case or controversy, and consequently, jurisdiction over this case. *Kremens*, 431 U.S. at 128–29. We therefore conclude that the Michigan Supreme Court's action has mooted Fieger's challenge.

## III.

We therefore vacate the decision of the district court and remand with instructions to dismiss Fieger's complaint.